*AUSA: TMW*

*County of Investigation: Spokane*

*In Re: Affidavit in Support of Criminal Complaint and Arrest Warrant for Carlos Torres Medrano, Jr.*

| | |
|---|---|
| STATE OF WASHINGTON ) | |
| ) ss | |
| Spokane County ) | |

## AFFIDAVIT IN SUPPORT

I, Andrew Creese, being duly sworn, deposes and states as follows:

1. I have been employed with the United States Marshals Service (USMS) since January 2015. I currently hold the position of Deputy United States Marshal (DUSM). One of my responsibilities is to investigate and appropriately mitigate all threats and inappropriate communications toward the federal judiciary, its respective court officers, and the U.S. Attorney's Office in and for the Eastern District of Washington.

2. As part of my current duties, I have become involved in an investigation of a suspected violation of 18 U.S.C. § 115(a)(1)(B)(Influencing, Impeding or Retaliating Against a Federal Official).

3. I make this affidavit in support of the complaint charging CARLOS TORRES MEDRANO, JR., with a violation of 18 U.S.C. § 115(a)(1)(B), regarding threats made to assault a Federal law enforcement

Affidavit of DUSM Andrew Creese - 1

officer to wit: an Assistant United States Attorney ("AUSA") of the United States Attorney's Office for the Eastern District of Washington, with the intent to with the intent to retaliate against the AUSA on account of the performance of her official duties.

4. Since this affidavit is being submitted for the limited purpose of securing a Criminal Complaint and Arrest Warrant, I have not included every fact known to me concerning this investigation. I have set forth only facts that I believe are necessary to establish probable cause to demonstrate CARLOS TORRES MEDRANO, JR., has violated 18 U.S.C. § 115(a)(1)(B).

5. On May 2, 2017, the Grand Jury in the Eastern District of Washington returned an Indictment in 2:17-CR-67-SMJ charging Defendant, CARLOS TORRES MEDRANO, JR., with Conspiracy to Possess with Intent to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine (Count 1), Possession with Intent to Distribute a Mixture or Substance Containing a Methamphetamine (Count 2), Possession with Intent to Distribute a Mixture or Substance Containing Heroin (Count 3), and Felon in Possession of a Firearm (Count 4).

6. On or about December 5, 2017, your affiant was contacted by an AUSA, who is based in the Spokane Office of the U.S. Attorney for the Eastern District of Washington, regarding a report that CARLOS TORRES MEDRANO,

Affidavit of DUSM Andrew Creese - 2

JR., had directed threatening statements towards her. The AUSA advised me that she had obtained information regarding the threat from a defense attorney, who was passing on information from his client.

7. On or about December 5, 2017, your affiant contacted the defense attorney and arranged for the USMS to interview his client (hereinafter referenced as "CI" (confidential informant)).

8. On or about December 5, 2017, your affiant interviewed the CI in the presence of his defense attorney. The CI advised your affiant that he (CI) had a conversation with CARLOS TORRES MEDRANO, JR.,(hereinafter "MEDRANO") on approximately December 4, 2017. During the interview, and in your affiant's presence, the CI made and singed a voluntary, written statement. Your affiant read the CI's written statement. In the statement, the CI reported that on approximately December 4, 2017, MEDRANO talked about his federal criminal case with the CI and said this "F.B. prosecutor has went out of her way to try an [sic] take my life. She threatened my wife an [sic] said to her that I should take the deal or get life." The CI also stated MEDRANO said his "wife has already done all the research on her & her family & friends & she's not the only one that can take someone's life." The CI also reported in his statement that MEDRANO said his (MEDRANO's) "dumb ass girl came to

Affidavit of DUSM Andrew Creese - 3

visit" after she finally found the AUSA's [first name][1] on Facebook. According to the CI's statement, MEDRANO said he told "her dumb ass to shut the F up cuz they might be recording it." MEDRANO also told the CI that the AUSA's husband "is like DEA". MEDRANO also said he'd be out in 18 months, "an [sic] he just would try to inadvertently be like he didn't need to be the one to reach out an [sic] handle [the first name of the AUSA was specified]. That he [MEDRANO] knows people & would be free." MEDRANO also stated that the AUSA's [first name][2] is different than what's on her Facebook page.

9.  Neither your affiant, or the USMS, or anyone in the United States Attorney's Office made any promises or inducements to the CI to obtain his statement. Your affiant was advised by the CI that the AUSA that was being threatened was also a prosecutor on a federal case in which the CI was charged.[3] The CI further advised your affiant that the reason he was providing information about the threat was because he thought the targeted AUSA had treated him fairly in his case and did not want to see her, or her family, harmed.

---

[1] The CI provided the first name of the AUSA.

[2] The CI provided the first name of the AUSA.

[3] The "targeted AUSA" is not the AUSA of record in the CI's federal matter. However, the targeted AUSA assisted the AUSA of record during an interview of the CI.

Affidavit of DUSM Andrew Creese - 4

10.     According to NCIC, which your affiant reviewed, the CI's criminal history includes convictions in 1994 for Unlawful Possession of Firearms, Controlled Substance Violation: manufacture/deliver/possess, Bail Jumping, Obstructing-Hinder Public Servant, Third Degree Driving While License Suspended, No Valid Driver's License, in 1995 Conspiracy to Distribute Methamphetamine, 1996 Conspiracy to Distribute Methamphetamine, 2003 Escape, 2006 No Valid Operator License without Identification, and 2006 Second Degree Assault.

11.     In 2016, the CI was charged federally with two counts of Distribution of 50 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine and one count of Possession with Intent to Distribute 50 grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine.  On December 7, 2017, the CI plead guilty, pursuant to a written Plea Agreement, to one count of Possession with intent to Distribute 50 grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine.  The CI has not received any consideration in his Plea Agreement for his statement about threats to the targeted AUSA.

12.     Your affiant interviewed the targeted AUSA and confirmed that she does have a Facebook account and does use an alias for her account.  The AUSA

Affidavit of DUSM Andrew Creese - 5

also confirmed that her husband works for the Drug Enforcement Administration (DEA).

13.   Your affiant reviewed recorded telephone calls made by MEDRANO to Brittany Canon (hereinafter "Canon") while he was detained in Whitman County Jail on federal charges in 2:17-CR-67-SMJ, in the Eastern District of Washington.  On dates ranging from November 24, 2017, to December 3, 2017, multiple recorded calls detail Canon's extreme anger at the targeted AUSA and further detail Canon's endeavors through Google search and Facebook to track postings related to accounts associated with the AUSA.  On December 3, 2017, during a visitation visit at the Whitman County Jail between MEDRANO and Canon, Canon told MEDRANO that the AUSA's Facebook is under a different name (other than her actual name) and that she's tagged in a picture with someone who must be her grandmother.  MEDRANO then cut off Canon and told Canon she shouldn't be saying that in the jail and Canon responded that she doesn't give a F.  Your affiant has confirmed with the Whitman County Jail that they have posted, both on the inmate side and visitor side of the visitation area where the visitation phones are located, signs that state conversations can be recorded during visitation.

14.   On December 6, 2017, your affiant interviewed Canon.  Your affiant asked Canon about her level of knowledge of a possible threat or

Affidavit of DUSM Andrew Creese - 6

gathering of personal information against someone related to MEDRANO's criminal case. Canon stated that neither herself nor MEDRANO had sought any such information and knew nothing about it. Further, Canon stated all she or MEDRANO were focused on were the efforts to get him released during the remaining phases of MEDRANO's criminal case. Your affiant further detailed that the threat was directed at the AUSA and your affiant advised Canon the unlawful act of providing false statements, the dangers of not reporting a criminal act to authorities (misprision of a felony), and taking an active role as a participant of a conspiracy to commit crime (murder/injure a public official). Canon again stated that MEDRANO had not been seeking any information against the AUSA or her family. Canon further stated that she and MEDRANO understood the AUSA was just doing her job and they had no hard feelings or thoughts of the AUSA's actions being personally motivated.

15.    Your affiant informed Canon that investigators had reviewed jail calls from the Whitman County Jail detailing conversations regarding attempts to gather personal information on the AUSA. Canon became visibly upset and began crying stating she had not been searching for personal information on the AUSA. Canon stated she had attempted to research the AUSA through Google search, focusing on attorney reviews. Canon stated that during this search which she claimed was motivated with the intent on writing a review on the AUSA for

Affidavit of DUSM Andrew Creese - 7

what she felt was aggressive pursuing of MEDRANO she found a link associated with the personal Facebook account of the AUSA. Canon detailed that she was very upset and angry with the AUSA for her actions during the prosecution of the criminal case against MEDRANO. Canon stated that she wasn't trying to find any information related to family or personal matters of the AUSA.

16. Your affiant asked CANNON how involved MEDRANO was in motivating Canon to find information online about the AUSA. Canon again stated that MEDRANO was not interested in that information and that she had searched on her own for information about the AUSA and again reiterated that she intended to write a review about the AUSA, not discover personal information about the AUSA. Your affiant inquired how Canon conducted her online endeavors. Canon stated she searched the internet using a laptop and her phone. Your affiant asked if the laptop was located at Canon's residence and how Canon accessed the internet. Canon stated that the laptop was at a male friend's house in Spokane, WA, and that she accessed the internet using her phone as a mobile hotspot. Canon further stated that her laptop and cell phone were connected through her Google and Gmail accounts and had mirrored search histories and that phone still contained that history.

17. During the interview of Canon, your affiant consulted via

Affidavit of DUSM Andrew Creese - 8

telephone with AUSA Lister and advised Lister of the information received from Canon.  AUSA Lister authorized the seizure of all electronic devices from Canon capable of accessing the Internet, to prevent the tampering with or destruction of any evidence on the devices.  AUSA Lister also advised, immediately after seizure of the electronic devices, an application for the seizure and search of the devices was to be submitted to the U.S. Magistrate Judge.  As a result, your affiant advised Canon that her phone and laptop were going to be seized.  Canon again became agitated and then stated she didn't actually have a laptop.  Canon stated she had pawned it a year ago at "Pawn1."  Your affiant inquired why Canon had stated she owned a laptop and had left it at a friend's house.  Canon stated she hoped that by saying the search history was the same only her laptop would be seized so she lied about owning one.  Your affiant advised Canon that all her electronic devices capable of accessing the Internet were going to be seized.  Your affiant again asked about the male friend in Spokane.  Canon stated she had not stopped at a friend's house and again stated she does not own a laptop.  Your affiant then asked Canon to clarify her timeline during the day after her appointment at DSHS.  Canon became evasive and stated she had walked home from DSHS after her appointment due to her car not working.  Your affiant informed Canon that her car had not been in the parking lot when checked earlier prior to her contact with your affiant informing of her

Affidavit of DUSM Andrew Creese - 9

arrival back home. Your affiant further advised Canon of the awareness of her suspended driver's license. Canon admitted to driving her car while having a suspended license and that she had been lying.

18. On December 8, 2017, your affiant obtained a federal search warrant for Canon's Android cell phone, ZTEZMAX Pro Z981.

19. Your Affiant reviewed the digital records retrieved from Canon's cell phone from December 8, 2017, through December 11, 2017. During review of the digital records, your affiant noted records indicating multiple email accounts associated with the device belonging to Canon. These accounts are Gmail email accounts listed as canonbrittany12@gmail.com, canonbrittany13@gmail.com, and evergreenking13@gmail.com. Your affiant also noted a possible Facebook account listed on Canon's device as https://m.facebook.com/brittany.canon.5. Your affiant further noted on/around November 20, 2017 through November 25, 2017, Canon extensively searched Google, Facebook, Yelp, and MySpace for information related to targeted AUSA. Your affiant noted these searches included alternate ID name used by the targeted AUSA on her Facebook account. Your affiant further noted online searches conducted by Canon for family members associated with targeted AUSA to include her husband and aunt. Your affiant viewed a downloaded image of the targeted AUSA located on Canon's device. Your affiant noted on

Affidavit of DUSM Andrew Creese - 10

December 5, 2017, Canon conducted multiple searches on what a beheading feels like.

20.     Your affiant reviewed a jail call on December 11, 2017, during which MEDRANO stated that Canon should change her Facebook password and report her seized phone stolen so the provider would lock it out.  Your affiant also reviewed a jail call where MEDRANO repeatedly asked Canon if there was anything on Canon's phone that shouldn't be.

21.     Based on the foregoing, your affiant respectfully submits that there is probable cause to believe that CARLOS TORRES MEDRANO, JR. has violated 18 U.S.C. § 115(a)(1)(B), and respectfully requests this Court to issue a Criminal Complaint and Arrest Warrant.

                              Respectfully submitted,

                              ANDREW CREESE *(digitally signed)*

                              Andrew Creese
                              Deputy United States Marshal
                              United States Marshals Service

Sworn to telephonically and signed electronically this __2nd__ day of January 2018.

                              _____
                              John T. Rodgers
                              United States Magistrate Judge



Affidavit of DUSM Andrew Creese - 11